UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YOSCABEL MARTINEZ,

       Plaintiff,

   -v.-

COLLINS BUILDING SERVICES, INC.,

       Defendant.

24 Civ. 6433 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

  Plaintiff Yoscabel Martinez brought this *pro se* action against her former employer, Collins Building Services, Inc. ("CBS"), claiming that CBS discriminated against her in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101-12213. Before the Court is CBS's motion to compel arbitration or dismiss Plaintiff's First Amended Complaint (the "FAC"), the operative pleading in this action. Because the parties are bound by an arbitration agreement that covers ADA claims, the Court grants Defendant's motion in part and stays this case pending arbitration.

## BACKGROUND[1]

### A. Factual Background

#### 1. Ms. Martinez's Health Issues

Plaintiff Yoscabel Martinez and her husband, Edwin Martinez, both worked for Defendant CBS. (FAC ¶¶ 3, 15; see SCC ¶ 1).[2] Specifically, Ms. Martinez was employed as an office cleaner from May 2011 to February 2023. (FAC ¶ 3; PMC Tr. 7). During her employment, Ms. Martinez was a member of the Service Employees International Union, Local 32BJ (the "Union"). (FAC ¶¶ 1, 18-19; Schudroff Aff., Ex. C at 1).

On January 5, 2023, during a dental appointment for cavity treatment, a dentist damaged a nerve in Ms. Martinez's mouth. (FAC ¶ 5). Ms. Martinez experienced "extreme pain" from a resulting infection and was advised to undergo a root canal. (Id. ¶¶ 5-6). A few days later, Ms. Martinez was referred to a different dental clinic for the root canal, which was scheduled for

---

[1] This Opinion draws its facts from Plaintiff's First Amended Complaint (the "FAC" (Dkt. #14)), the well-pleaded allegations of which are taken as true for purposes of this Opinion. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The Court also relies, as appropriate, on the transcript of the October 16, 2024 pre-motion conference ("PMC Tr." (Dkt. #12)); the affirmation of Daniel D. Schudroff in support of CBS's motion to compel arbitration or dismiss Plaintiff's FAC ("Schudroff Aff." (Dkt. #20)) and the exhibits attached thereto ("Schudroff Aff., Ex. [ ]"); and Plaintiff's state-court complaint (the "SCC" (Dkt. #5, Ex. B)).

For ease of reference, the Court refers to CBS's memorandum of law in support of its motion to compel arbitration or dismiss Plaintiff's FAC as "CBS Br." (Dkt. #19); to Plaintiff's declaration in opposition as "Pl. Opp." (Dkt. #22); and to CBS's memorandum of law in reply as "CBS Reply" (Dkt. #23).

[2] The nature of Mr. Martinez's employment is unclear. Despite Ms. Martinez's references to her husband in the FAC, he is not a plaintiff in this case.

2

January 24, 2023. (*Id.* ¶¶ 7-8; PMC Tr. 9).³ In the time leading up to the scheduled treatment, Ms. Martinez continued to work for CBS and kept the company informed about her medical condition. (FAC ¶¶ 9-10). She also took paid time off for additional dental appointments. (*Id.* ¶ 9).

On January 24, 2023, the day of her root canal, Ms. Martinez spoke with a representative from CBS's Human Resources Department ("HR") about taking sick leave. (FAC ¶ 11). The HR representative verbally represented to Ms. Martinez that she was already on disability leave. (*Id.* ¶ 12). Based on that representation, Ms. Martinez believed that CBS had completed the necessary paperwork on her behalf, and that she would be on disability leave until March. (*Id.* ¶ 13). Her husband, Mr. Martinez, separately requested to take family leave to care for her until February. (*See id.* ¶¶ 14-15).

While on leave, Ms. Martinez suffered from worsening symptoms, including heavy bleeding, extreme pain, and loss of hearing in one ear. (FAC ¶ 17). Ms. Martinez and her husband sought help from the Union to "assert[] her ADA rights," but that request was allegedly rejected. (*Id.* ¶ 18). An individual who overheard the conversation between the Martinezes and the Union then offered to help complete the relevant paperwork — presumably regarding Ms. Martinez's medical condition — for a small fee. (*Id.* ¶ 20). Neither Mr. Martinez nor Ms. Martinez is fluent in English. (*Id.* ¶ 24; *see* PMC

---

3    The FAC incorrectly described certain events as taking place in 2024 instead of in 2023. (*See* FAC ¶¶ 8, 11, 13, 14, 15). Based on the Court's discussion with Ms. Martinez at the pre-motion conference and the general timeline of the FAC, the Court is certain that the dental appointments and subsequent factual events took place in 2023. Therefore, the Court uses 2023 as the appropriate year in the factual background.

Tr. 3). Mr. Martinez agreed to the proposal, and the individual assisted him with the paperwork, though the individual made a mistake by indicating that the requested medical leave was for Mr. Martinez rather than for Ms. Martinez. (FAC ¶¶ 21, 24). Nevertheless, Mr. Martinez provided the completed (albeit incorrect) paperwork to the Union, which sent it to CBS. (*Id.* ¶ 22).

A week later, on February 23, 2023, CBS accused Mr. Martinez of fraud. (FAC ¶ 23). After Mr. Martinez explained that he sought help from someone else to complete the paperwork because of his English-language barrier, CBS gave him two days to correct and resubmit the paperwork. (*Id.* ¶¶ 24-25). Mr. Martinez did so, but on February 28, 2023, CBS terminated both Martinezes, alleging that they had provided false information and that Ms. Martinez had faked her illness and disability. (*Id.* ¶¶ 26-28, 30). At that point, Ms. Martinez also learned that HR never submitted disability paperwork on her behalf. (*Id.* ¶ 29). Despite Mr. Martinez's efforts at sending the corrected documents to CBS by mail, the Martinezes never heard back from CBS or the Union. (*Id.* ¶¶ 31-32). Because Ms. Martinez continued to struggle with dental issues, the Martinezes were forced to make early retirement withdrawals to "make ends meet." (*Id.* ¶ 33). Their employment remains terminated today. (*Id.* ¶ 32).

### 2. The Arbitration Agreement

CBS and the Union negotiated a Collective Bargaining Agreement (the "CBA"), which included an agreement covering contractor members of the Union like Ms. Martinez (the "2020 Contractors Agreement" (Schudroff Aff.,

Ex. C)).[4]  As relevant here, the 2020 Contractors Agreement contained a no-discrimination provision, which prohibited discrimination on the basis of disability and other characteristics and which contemplated claims made pursuant to the Americans with Disabilities Act (the "ADA").  (*Id.* at 111).  The provision included an arbitration clause, specifying that "[a]ll such claims shall be subject to the grievance and arbitration procedure [detailed elsewhere in the Agreement] as the sole and exclusive remedy for violations."  (*Id.*).  The provision further clarified that "[t]he undertakings described here with respect to arbitration apply to those circumstances in which the Union has declined to arbitrate an employee's individual employment discrimination claim … , including statutory claims."  (*Id.* at 116).

**B.    Procedural History**

Before coming to federal court, Ms. Martinez availed herself of other resources.  On March 21, 2023, she filed a complaint with the New York State Division of Human Rights (the "NYSDHR"), alleging that she had been denied a reasonable accommodation and ultimately terminated because of her disability, which she described as a "[s]evere dental infection."  (Schudroff Aff., Ex. D at 10-15).  Concurrently, she filed an employment discrimination charge under the ADA with the federal Equal Employment Opportunity Commission (the "EEOC").  (*Id.* at 18).  On October 4, 2023, the NYSDHR made the

---

[4]    According to CBS, the 2020 Contractors Agreement was subsequently amended by a 2024 Stipulation of Agreement.  (CBS Br. 3 n.2; *see* Schudroff Aff., Ex. B).  Because the 2024 amendment came into effect after Ms. Martinez's termination, the Court will not consider the amendment in its analysis.

5

determination that there was no probable cause "to believe that [CBS] has engaged in or is engaging in the unlawful discriminatory practice complained of." (Schudroff Aff., Ex. E at 2). Accordingly, the NYSDHR dismissed her complaint. (*Id.* at 3). Similarly, on November 29, 2023, the EEOC determined that it would not proceed further with its investigation, and it provided Ms. Martinez with a right-to-sue letter on the ADA charge. (Schudroff Aff., Ex. F at 3).

On July 16, 2024, Ms. Martinez proceeded to file suit in New York state court for "wrongful termination, failure to provide Family and Medical Leave Act ([']FMLA[']) rights, and mismanagement of disability leave and related paperwork." (SCC ¶ 1). CBS promptly removed the case to federal court, invoking federal question jurisdiction under 28 U.S.C. § 1331. (Dkt. #5). After the case was assigned to this Court, CBS filed a pre-motion letter requesting a conference to discuss its anticipated motion to compel arbitration or dismiss Plaintiff's complaint. (Dkt. #6). On October 16, 2024, the Court held the pre-motion conference, during which it explained to Ms. Martinez that her complaint suffered from several issues, including that (i) she cannot represent her husband in her individual complaint while proceeding *pro se*, (ii) there is an arbitration provision that might bind her to arbitration, and (iii) there are certain time limits that she may have exceeded. (October 16, 2024 Minute Entry; PMC Tr. 28-29). In light of those concerns, the Court referred Ms. Martinez to a legal assistance clinic and gave her an opportunity to amend her complaint. (Dkt. #11).

On January 21, 2025, Ms. Martinez filed her FAC, which alleged the denial of reasonable accommodations and disparate treatment on the basis of her disabilities under the ADA. (FAC ¶ 1). The FAC also seemed to claim that both CBS and the Union had violated Ms. Martinez's rights under the CBA, including her "entitlement to appropriate grievance resolution mechanisms," and that CBS's failure to attend certain hearings had reflected its disregard for the due process of the case. (*Id.* ¶¶ 1-2). Nevertheless, Ms. Martinez did not name the Union as a defendant in this case. Furthermore, the FAC did not carry over the claims of wrongful termination, FMLA violations, and mismanagement of disability leave from Ms. Martinez's state-court complaint. In response, CBS filed a letter requesting permission to file a motion to compel arbitration or dismiss Plaintiff's FAC. (Dkt. #15). The Court granted that request, setting a briefing schedule for CBS's motion. (Dkt. #16). The Court also noted that the FAC "continues to name Plaintiff alone, and not her husband, as a party." (*Id.*). On March 7, 2025, CBS filed its motion to compel arbitration or dismiss the FAC, along with supporting papers. (Dkt. #18-20). Ms. Martinez filed a declaration in opposition to CBS's motion on March 27, 2025. (Dkt. #22). And on April 28, 2025, CBS filed its reply memorandum of law. (Dkt. #23).

**DISCUSSION**

**A.    Applicable Law**

Under the Federal Arbitration Act (the "FAA"), a party to an arbitration agreement can petition the appropriate federal district court for an order compelling arbitration when its counterparty "fail[s], neglect[s], or refus[es] … to arbitrate" under the terms of the agreement. 9 U.S.C. § 4. That is because "[t]he FAA reflects 'a liberal federal policy favoring arbitration agreements,'" and it "places arbitration agreements on 'the same footing as other contracts.'" *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (first quoting *AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333, 346 (2011); and then quoting *Schnabel* v. *Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)). Indeed, Section 2 of the FAA provides that "[a] written provision in … a contract … to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2.

In ruling on a motion to compel arbitration, a district court must evaluate two prongs that determine arbitrability: "[i] whether the parties agreed to arbitrate, and, if so, [ii] whether the scope of that agreement encompasses the claims at issue." *Holick* v. *Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (quoting *Bank Julius Baer & Co., Ltd.* v. *Waxfield, Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005), *abrogated on other grounds by, Granite Rock Co.* v. *Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010)). The standard under which the court evaluates evidence pertaining to arbitrability is similar to that for summary

judgment — that is, the court must consider all relevant and admissible evidence and draw all reasonable inferences in favor of the non-moving party. *Meyer*, 868 F.3d at 74. "[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and 'avoid the need for further court proceedings.'" *Wachovia Bank, Nat'l Ass'n* v. *VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (quoting *Bensadoun* v. *Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)).

Finally, in *pro se* cases, courts should "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (internal quotation marks omitted) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

### B. The Court Grants CBS's Motion to Compel Arbitration

#### 1. CBS and the Union Agreed to Arbitrate ADA Claims

Under the CBA, there is a valid agreement to arbitrate ADA claims. The no-discrimination provision in the 2020 Contractor Agreement specifically mentioned ADA claims and required that "[a]ll such claims … be subject to [certain] grievance and arbitration procedure[s]." (Schudroff Aff., Ex. C at 111). The parties to the CBA — namely, CBS and the Union — clearly agreed to arbitrate, and the scope of their agreement unmistakably encompasses ADA claims. *See Holick*, 802 F.3d at 394. Critically, Ms. Martinez does not dispute that such an arbitration agreement exists. (*See* Pl. Opp. 2 (acknowledging that

9

CBS and the Union had "the option to proceed [to arbitration] under the Collective Bargaining Agreement")). And even under the most liberal reading of Ms. Martinez's amended pleadings and filings, the Court finds that she has not raised any non-ADA claims that may fall outside of the scope of the arbitration agreement. (*See, e.g., id.* ("This case is … about ensuring [Ms. Martinez's] rights under the American with Disabilities Act … are upheld.")).[5] Therefore, if Ms. Martinez is bound by the arbitration agreement between her employer and her union, then her ADA claims must be arbitrated.

### 2. Ms. Martinez Is Bound by the Arbitration Agreement

As a member of the Union, Ms. Martinez must abide by the CBA and its arbitration agreement. In *14 Penn Plaza LLC* v. *Pyett*, 556 U.S. 247 (2009), the Supreme Court held that "a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate [certain statutory] claims is enforceable as a matter of federal law." *Id.* at 274. Examining such an agreement to arbitrate employment-discrimination claims — specifically violations of the Age Discrimination in Employment Act (the "ADEA") — the

---

[5]   While the FAC made passing references to possible violations of the CBA and due process (*see* FAC ¶¶ 1-2), the Court declines to construe the FAC as raising those additional claims without any factual allegations to support them. *See Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (explaining that *pro se* submissions must be construed liberally but noting that "[a]t the same time, … [the court] cannot read into *pro se* submissions claims that are not 'consistent' with the *pro se* litigant's allegations" (quoting *Phillips* v. *Girdich*, 408 F.3d 124, 127 (2d Cir. 2005))). Here, the FAC did not explain how CBS violated Ms. Martinez's rights under the CBA, and it did not provide any information on the hearings that CBS was required to attend or how CBS's alleged failure to attend violated due process. In fact, it appears that Ms. Martinez invoked "due process" not as a constitutional right but in reference to an expected course of dispute resolution. (*See* FAC ¶ 2 (arguing that CBS's failure to attend the hearings "reflects [its] disregard for … the due process of this case")).

Supreme Court explained that "[n]othing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative." *Id.* at 251, 258. Rather, the Supreme Court required only that "an agreement to arbitrate statutory antidiscrimination claims be 'explicitly stated' in the collective-bargaining agreement," *id.* at 258-59 (quoting *Wright* v. *Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998)), and that Congress did not preclude "this particular class of grievances" from arbitration, *id.* at 257-58. In the context of ADEA claims, the Supreme Court was satisfied that the "[National Labor Relations Act (the "NLRA")] provided the Union and the [employer] with statutory authority to collectively bargain for arbitration of workplace discrimination claims, and Congress did not terminate that authority with respect to federal age-discrimination claims in the ADEA." *Id.* at 260.

Courts in this District have routinely extended the logic of *Pyett* to various other types of employment-discrimination claims, including ADA claims. *See, e.g.*, *Borden* v. *Wavecrest Mgt. Team Ltd.*, No. 11 Civ. 6737 (GBD) (FM), 2012 WL 4094959, at *2 (S.D.N.Y. Sept. 18, 2012) (applying *Pyett* to enforce a collective-bargaining agreement mandating arbitration of ADA claims and determining that nothing in the statute "suggests that the ADA favors resolution of discrimination claims in federal court rather than before an arbitral panel"); *Germosen* v. *ABM Indus. Corp.*, No. 13 Civ. 1978 (ER), 2014 WL 4211347, at *6-7 (S.D.N.Y. Aug. 26, 2014) (same); *Garnes* v. *Pritchard Indus., Inc.*, No. 23 Civ. 6699 (PAE) (SLC), 2024 WL 5249820, at *6 (S.D.N.Y. July 22,

11

2024) (collecting cases). The ADA claims in this case are no different — they are subject to mandatory arbitration under the CBA.

Ms. Martinez argues that she is not bound by the arbitration agreement because the Union "declined to advance this matter to arbitration" and refused to represent her. (Pl. Opp. 1-2). Nevertheless, the CBA here makes clear that ADA claims brought by individual employees like Ms. Martinez are subject to arbitration even when "the Union has declined to arbitrate [the] employee's individual employment discrimination claim." (Schudroff Aff., Ex. C at 116). Because Ms. Martinez has not otherwise "shown that the CBA prevents [her] from effectively vindicating [her] statutory rights in the arbitral forum," this Court must enforce "[t]he CBA's waiver of the judicial forum." *Gildea* v. *BLDG Mgmt.*, No. 10 Civ. 3347 (DAB), 2011 WL 4343464, at *5-6 (S.D.N.Y. Aug. 16, 2011) (rejecting plaintiff's argument that "his union's refusal to adjudicate his claim … entitles him to pursue his action against the employer in federal court rather than through arbitration" (internal quotation marks omitted)); *accord Duraku* v. *Tishman Speyer Props., Inc.*, 714 F. Supp. 2d 470, 474 (S.D.N.Y. 2010) (enforcing arbitration agreement with similar language mandating arbitration of claims brought by individual employee without union representation).

### 3. The Court Will Stay This Case Pending Arbitration

When neither side has requested a stay, a district court can exercise its "discretion in determining whether to stay or dismiss the case pending arbitration." *Occilien* v. *Related Partners, Inc.*, No. 19 Civ. 7634 (KPF), 2021 WL

184399, at *9 (S.D.N.Y. Jan. 19, 2021). In general, courts in this Circuit favor granting a stay, even when a party requests dismissal of the case. *See, e.g.*, *Castellanos* v. *Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 302 (E.D.N.Y. 2018) (exercising discretion to stay proceedings despite defendant's request for dismissal). That is because a "stay enables parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award." *Katz* v. *Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015). In addition, a stay allows the Court to address claims that are not resolved in arbitration at a later stage.

Here, CBS seems to request both that the Court dismiss this case because of the mandatory arbitration and that the Court dismiss this case under Federal Rule of Civil Procedure 12(b)(6) in the alternative. (*See* CBS Br. 6 & n.5 (suggesting that the Court should dismiss the action if it grants CBS's motion to compel arbitration); *id.* at 10-11 (providing alternative arguments under Rule 12(b)(6))). Because the Court agrees with CBS's arguments for mandatory arbitration, it will not address CBS's alternative arguments for dismissal. The Court also notes that CBS states elsewhere in its main brief that the case "must at least be stayed pending the outcome of private dispute resolution proceedings." (*Id.* at 8 n.8). In light of the general presumption in favor of staying rather than dismissing a case pending arbitration, and because the Court wishes to "promote expeditious resolution of this dispute," *Castellanos*, 291 F. Supp. 3d at 302, it will exercise its discretion to stay the case pending arbitration.

**CONCLUSION**

For the foregoing reasons, CBS's motion to compel arbitration is GRANTED and its motion to dismiss is DENIED. The case is STAYED pending arbitration. The parties are directed to provide a joint status update to the Court every six months, with the first update due to the Court on or before **May 7, 2026**.

The Clerk of Court is directed to terminate the pending motion at docket entry 18, and to mail a copy of this Opinion to Plaintiff at her address of record.

SO ORDERED.

Dated:   November 7, 2025
        New York, New York

                                      KATHERINE POLK FAILLA
                                      United States District Judge